IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| CYNTHIA DANZY,<br>　　　　*Plaintiff*<br><br>-vs-<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br>　　　　*Defendant* | § §§§§§§§§§<br><br>SA-21-CV-00350-XR |

# ORDER

On this date, the Court considered United States Magistrate Judge Elizabeth Chestney's Report and Recommendation regarding the above numbered and styled case, filed April 5, 2022 (ECF No. 16) and Plaintiff Cynthia Danzy's objections, filed on April 18, 2022 (ECF No. 18). After careful review, the Court **ACCEPTS** Magistrate Judge Chestney's recommendation and **AFFIRMS** the Commissioner's decision.

## BACKGROUND

This case involves Plaintiff Cynthia Danzy's ("Danzy") request for review of the administrative denial of her application for disability benefits under the Social Security Act, 42 U.S.C. §§ 405(g), 421(d). This Court has jurisdiction to review a final decision of the Social Security Administration. *See* 42 U.S.C. § 405(g).

Danzy filed an application for Title II disability insurance benefits on February 21, 2019, alleging disability beginning September 3, 2017. ECF No. 7-5 at 2. Danzy based her claim on several physical conditions, including a torn meniscus, plantar fasciitis, and carpal tunnel. ECF No. 7-3 at 3. At the time of her claim, Danzy was a 55-year-old woman with a high school degree. ECF No. 7-3 at 2; ECF No. 7-6 at 17. She had work experience as a correction officer for

the City of New York, as a greeter for Enterprise Car Rental, as a food service worker at North Side ISD, and as a dispatcher at Sea World. ECF No. 7-6 at 17.

Danzy's application for benefits was initially denied on May 9, 2019, and denied again upon reconsideration on July 9, 2019. ECF No. 7-3 at 6, 12. Danzy subsequently requested a hearing before an Administrative Law Judge ("ALJ"). *See* ECF No. 7-2 at 36. The ALJ conducted the hearing on March 20, 2020, and Danzy testified at the hearing that she has difficulty walking, must rest frequently to manage her knee pain, and that she had quit her most recent job at Enterprise because it required her to be on her feet for too long. *Id.* at 36, 64.

The ALJ denied Danzy's claim for benefits. *Id.* at 21–31. In reaching that conclusion, the ALJ first found that Danzy last met the insured-status requirements of the Act on December 31, 2017, and then applied the five-step sequential analysis required by the regulations. *See id.* at 26. At step one, the ALJ found Danzy had not engaged in substantial gainful activity during the period from her alleged onset date of September 3, 2017, through her date last insured of December 31, 2017. *Id.* At step two, the ALJ found Danzy had the following severe impairments: degenerative joint disease of the bilateral knees, plantar fasciitis, and obesity. *Id.* The ALJ also noted that Danzy's medical records documented hypertension, depression, hallus valgus and bunion, insomnia, hyperlipidemia, vitamin D deficiency, Menire's disease, and leukopenia, but ultimately concluded these conditions were non-severe. *Id.* at 26–27.

At step three, the ALJ found that Danzy's impairments, singularly or in combination, did not meet or medically equal one of the listed impairments in the applicable Social Security regulations. *Id.* at 27. Before reaching step four, the ALJ found Danzy had the residual functional capacity ("RFC") to perform less than the full range of light work as defined in 20 C.F.R. § 404.1567(b), concluding that Danzy can: lift twenty pounds occasionally and ten pounds

frequently; stand and sit for six hours in an eight-hour workday; frequently balance; can occasionally climb ropes, ladders, scaffolds, ramps, stairs; and can occasionally stoop, kneel, crouch, and crawl. *Id.* at 29. In reaching this RFC, the ALJ compared Danzy's testimony concerning her physical limitations and the pain she experiences to her medical records and reported daily activities. *Id.* at 29–30. The ALJ found that Danzy's "severe impairments result in limitations of some work-related functions," but ultimately concluded that "the medical evidence of record does not support [Danzy's] allegations of disabling symptoms." *Id.* at 30.

At step four, the ALJ found that through the date last insured, Danzy could perform her past relevant work as a corrections officer, car rental clerk, dispatcher, and security officer, all of which the vocational expert testified could be performed at the light or sedentary level. *Id.* at 31. Accordingly, the ALJ concluded that Danzy was not disabled for the purposes of the Act during the relevant period of September 3, 2017, through December 31, 2017. *Id.* at 32.

Danzy requested review of the ALJ's findings, which the Appeals Council denied. *Id.* at 2. Accordingly, Danzy filed the instant case, seeking judicial review of the administrative determination. ECF No. 1. On April 5, 2022, Magistrate Judge Chestney tendered her Report and Recommendation, recommending that the Commissioner's decision be affirmed. ECF No. 16. Danzy timely filed her objections on April 18, 2022. ECF No. 18.

## DISCUSSION

I. **Applicable Legal Standards**

A. **Standard of Review**

Where the report and recommendation has been objected to, the Court reviews the Magistrate Judge's recommended disposition *de novo* pursuant to Federal Rule of Civil Procedure 72 and 28 U.S.C. § 636(b)(1). In reviewing the Commissioner's decision denying

disability benefits, the reviewing court is limited to determining whether substantial evidence supports the decision and whether the Commissioner applied the proper legal standards in evaluating the evidence. *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995); 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Villa v. Sullivan*, 895 F.2d 1019, 1021–22 (5th Cir. 1990) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988) (quoting *Hames*, 707 F.2d at 164).

If the Commissioner's findings are supported by substantial evidence, then they are conclusive and must be affirmed. *Martinez*, 64 F.3d at 173. In reviewing the Commissioner's findings, a court must carefully examine the entire record, but refrain from reweighing the evidence or substituting its judgment for that of the Commissioner. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *see also Villa*, 895 F.2d at 1021 (the court is not to reweigh the evidence, try the issues de novo, or substitute its judgment for that of the Commissioner). Conflicts in the evidence and credibility assessments are for the Commissioner and not for the courts to resolve. *Martinez*, 64 F.3d at 174.

### B. Entitlement to Benefits

Every individual who is insured for disability benefits, has not reached retirement age, has filed an application for benefits, and is under a disability, is eligible to receive disability insurance benefits. 42 U.S.C. § 423(a)(1). The Act defines "disability" as the "inability to engage

in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). An individual shall be determined to be under a disability only if her physical or mental impairment or impairments are of such severity that she is not only unable to do her previous work but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work that exists in the national economy, regardless of whether such work exists in the immediate area in which she lives, or whether a specific job vacancy exists for her, or whether she would be hired if she applied to work. 42 U.S.C. § 423(d)(2)(A).

### C. Evaluation Process and Burden of Proof

Regulations set forth by the Commissioner require disability claims to be evaluated by a prescribed five-step process. 20 C.F.R. §§ 404.1520. A finding that a claimant is disabled or not disabled at any point in the process is conclusive and terminates the analysis. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

The first step involves determining whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). If so, the claimant will be found not disabled regardless of her medical condition or her age, education, or work experience. *Id.* The second step involves determining whether the claimant's impairment is severe. *Id.* § 404.1520(c). An impairment is severe if it is anything more than a "slight abnormality" that "would not be expected to interfere" with a claimant's ability to work. If a claimant has no severe impairments,

5

the claimant is deemed not disabled. This second step requires the claimant to make a *de minimis* showing. *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018).

In the third step, the ALJ compares the severe impairment(s) with those on a list of specific impairments. 20 C.F.R. § 404.1520(d). If a claimant's impairment meets or equals a listed impairment, the claimant is deemed disabled without considering his or her age, education, or work experience. *Id.* If the impairment is not on the list, the ALJ moves on to the fourth step and reviews the claimant's RFC and the demands of her past work. *Id.* § 404.1520(e). At this step, the ALJ may consult a vocational expert to determine how a particular job is usually performed. SSR 00-4p, 2000 WL 1898704 (Dec. 4, 2000); *see also Biestek v. Berryhill*, 139 S. Ct. 1148 (2019). If the claimant is still able to do her past work, the claimant is not disabled. 20 C.F.R. § 404.1520(f). If the claimant cannot perform her past work, the ALJ moves to the fifth and final step, evaluating the claimant's ability, given her residual capacities, age, education, and work experience, to do other work. *Id.* § 404.1520(g). If the claimant cannot do other work, she will be found disabled. *Id.*

The claimant bears the burden of proof at the first four steps of the sequential analysis. Once the claimant has shown that she is unable to perform her previous work, the burden shifts to the Commissioner to show that there is other substantial gainful employment available that the claimant is not only physically able to perform, but also, taking into account her exertional and nonexertional limitations, able to maintain for a significant period of time. *Watson v. Barnhart*, 288 F.3d 212, 217 (5th Cir. 2002). If the Commissioner adequately points to potential alternative employment, the burden shifts back to the claimant to prove that she is unable to perform the alternative work. *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991).

## II. Analysis

Danzy raises two points of error. First, she contends that the ALJ's RFC determination was not supported by substantial evidence, as there was no medical opinion of record and the ALJ should have further developed the record. ECF No. 10 at 5. Next, Danzy argues that the ALJ failed to provide adequate reasons for rejecting her testimony regarding the severity of her symptoms and how they impacted her daily work and life activities. *Id.*

### A. The Magistrate Judge's Report and Recommendation

The Magistrate Judge determined that the ALJ did not err in failing to further develop the record, that substantial evidence supports the ALJ's RFC determination, and that the ALJ did not err in rejecting Danzy's testimony regarding the severity of her symptoms. First, the Magistrate Judge concluded the ALJ had no further obligation to develop the record in this case by contacting Dr. Phelps, Danzy's knee surgeon, for additional records that predate her alleged disability because the record did not establish that an examination was necessary to enable the ALJ to make a disability decision. ECF No. 16 at 9. Further, the Magistrate Judge concluded that the medical records available to the ALJ provide substantial evidence from which to determine Danzy was not disabled during the relevant period. *Id.* at 9–10. Last, the Magistrate Judge found that the ALJ properly concluded that the medical evidence did not support Danzy's testimony of disabling symptoms. *Id.* at 12.

### B. Danzy's Objections

Danzy's objections largely re-urge the points of error she briefed initially. First, she argues that the ALJ's RFC determination wholly lacks support from a medical professional, and that the ALJ's failure to obtain a consultative examination is legal error. Danzy next contends

7

that while the ALJ cited to medical evidence in rejecting Danzy's testimony, the ALJ did not explain how Danzy's symptoms are inconsistent with the medical records.

### C. Discussion

#### 1. The ALJ properly developed the record, and substantial evidence supports the ALJ's determination.

Danzy first argues that the ALJ erred by making his RFC determination without further developing the record and obtaining a medical statement. "The ALJ has a duty to develop the facts fully and fairly relating to an applicant's claim for disability benefits." *Ripley*, 67 F.3d at 557. The ALJ is responsible for determining an applicant's RFC. *Id.* Usually, the ALJ should request a medical source statement describing the types of work that the applicant is still capable of performing. *Id.* The absence of such a statement, however, does not, in itself, make the record incomplete. *Id.* Where no medical statement has been provided, the inquiry focuses on whether the ALJ's decision is supported by substantial evidence in the existing record. *Id.* The record should contain evidence of the effect of the applicant's impairments on their ability to work. *Id.* The Commissioner must consider all medical opinions contained in the record when making the RFC determination. *Id.*

The ALJ's RFC determination is supported by substantial evidence. Medical examinations by Danzy's primary care provider immediately preceding September 3, 2017, documented normal motor strength and muscle tone, normal gait, normal ambulation, no abnormalities, and normal movement of all extremities. ECF No. 7-8 at 63 (June 2017 examination), 67 (April 2017 examination). On September 14, 2017—during the relevant period—her primary care doctor recorded the same observations. *Id.* at 56. Again, on October 3 and December 13, 2017, Danzy's primary care doctor did not note any abnormal findings from her examination. *Id.* at 47–48, 52.

Danzy additionally visited her orthopedist, Dr. Christopher Phelps, on November 15, 2017. ECF No. 7-9 at 27. Dr. Phelps noted in his assessment a history of osteoarthritis in both of Danzy's knees, but that Danzy was still able to ambulate normally, had a normal range of motion, and that the knee was stable. *Id.* During the appointment, Dr. Phelps treated Danzy's knees with a steroid injection and noted that Danzy had previously responded well to steroid injections. *Id.* at 27–28. At her next appointment with Dr. Phelps, Danzy reported that the steroid injection relieved her pain. *Id.* at 25.[1]

Danzy argues that the ALJ erred by failing to obtain a medical opinion concerning the functional limitations caused by her knee pain. While there are no medical opinions of record concerning Danzy's ability to work, the ALJ was not required to obtain such an opinion in this case. While a consultation in some circumstances is required to develop a full and fair record, this requirement is only triggered where "the record establishes that such an examination is *necessary* to enable the administrative law judge to make the disability decision." *Jones v. Bowen*, 829 F.2d 524, 526 (5th Cir. 1987) (quoting *Turner v. Califano*, 563 F.2d 669, 671 (5th Cir. 1977)) (emphasis in original). "A consultative evaluation becomes 'necessary' only when the claimant presents evidence sufficient to raise a suspicion concerning [the claimed] impairment." *Brock v. Charter*, 84 F.3d 726, 728 (5th Cir. 1996) (quoting *Jones*, 829 F.2d at 526).

Here, the record before the ALJ did not give rise to a suspicion of a disability. For pain to be disabling, it "must be constant, unremitting, and wholly unresponsive to therapeutic treatment." *Wren v. Sullivan*, 925 F.2d 123, 128 (5th Cir. 1991). The medical records Danzy provided show that, while she was experiencing pain from her conditions, her pain was

---

[1] While Danzy also reported locking and catching in her knee joint at that appointment, this symptom did not occur until after the relevant period. *See* ECF No. 7-9 at 25.

responsive to treatment. ECF No. 7-9 at 25. Further, as the Magistrate Judge noted, a consultative examination would not be practical in this case, "considering the subjective nature of Danzy's symptoms, which primarily stem from pain." ECF No. 16 at 10. Ultimately, Danzy has the burden to prove her disability by establishing physical or mental impairment. *Wren*, 925 F.2d at 128. "If she is not able to provide sufficient medical evidence, the ALJ may make a decision based on the information available." *Id.* Substantial evidence supports the ALJ's determination, and the ALJ was not required to further develop the record through a consultative evaluation.

### 2. The ALJ gave sufficient weight to Danzy's testimony concerning the severity of her pain.

In determining a claimant's RFC, the ALJ "must consider subjective evidence of pain, but it is within his discretion to determine the pain's disabling nature." *Wren*, 925 F.2d at 128 (internal citations omitted); *see also* 20 C.F.R. § 404.1529(a). In addition to considering the claimant's subjective evidence of pain, the ALJ weighs multiple factors to determine the nature and severity of a claimant's pain, including:

> (1) The claimant's daily activities;
> (2) The location, duration, frequency, and intensity of the claimant's pain or other symptoms;
> (3) Precipitating and aggravating factors;
> (4) The type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate her pain or other symptoms.
> (5) Treatment, other than medication, the claimant receives or has received for pain relief or her other symptoms;
> (6) Any measures claimant uses or has used to relieve pain or other symptoms; and
> (7) Other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3). However, the ALJ "is *not* required to mechanically follow every guiding regulatory factor in articulating reasons for denying claims or weighing credibility."

*Clary v. Barnhart*, 214 F. App'x 479, 482 (5th Cir. 2007) (emphasis in original). And while subjective evidence must be considered, it is not entitled to precedence over objective evidence. *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990). "Moreover, a factfinder's evaluation of the credibility of subjective complaints is entitled to judicial deference if supported by substantial record evidence." *Id.*

At the hearing, Danzy testified that she can only walk eight feet at a time, stand for fifteen to twenty minutes, sit for about half an hour, and only lift one to two pounds. She further testified that she must lay down for several hours per day due to her pain, and that for about 15 days per month, her pain level is at a 9 out of 10. The ALJ compared Danzy's testimony to the medical records that, as discussed, reflected normal examinations and improvement of Danzy's knee pain with steroid injections. The ALJ additionally cited evidence that Danzy could care for herself by preparing meals, performing household work, walking her dog, driving, attending church, visiting friends and family, and shopping in stores. ECF No. 7-2 at 27–28; *see also* ECF No. 7-6 at 33–36. Thus, the ALJ concluded that Danzy's impairments could "reasonably be expected to cause the alleged symptoms," but that her statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" ECF No. 7-2 at 30. Although the ALJ did not discuss each regulatory factor "mechanically," the ALJ discussed several factors in assessing Danzy's testimony, specifically her daily activities, the treatment she receives for her pain, as well as her medical records. The ALJ thus properly considered Danzy's subjective complaints of pain in comparing her testimony to the objective evidence in the record.

Danzy contends that the ALJ should not have discounted her testimony because it is consistent with the objective evidence. ECF No. 10 at 10; ECF No. 18 at 2–3. Specifically,

Danzy notes that the objective evidence is consistent with her testimony that her pain is not responsive to treatment. *See* ECF No. 10 at 10. However, the objective evidence Danzy cites to support this argument are medical records from after the relevant period. *See id.* As this evidence was acquired outside the relevant time frame, it is not material. *See Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994) ("[I]t is implicit in the materiality requirement that the new evidence relate to the time period for which benefits were denied, and that it not concern evidence of a later-acquired disability *or of the subsequent deterioration of the previously non-disabling condition*." (quoting *Haywood v. Sullivan*, 888 F.2d 1463, 1471 (5th Cir. 1989) (emphasis added))). Further, the ALJ did credit Danzy's complaints by limiting her to a limited range of light work, "but not to the extent that [she] wished." *See Carrier v. Sullivan*, 944 F.2d 243, 247 (5th Cir. 1991). "How much pain is disabling is a question for the ALJ since the ALJ has primary responsibility for resolving conflicts in the evidence," and this Court may not reweigh the evidence. *Id.* (quoting *Scharlow v. Schweiker*, 655 F.2d 645, 648 (5th Cir. 1981)). The ALJ did not commit reversible error in assessing Danzy's credibility, and his determination is supported by substantial evidence.

## CONCLUSION

For the foregoing reasons, the recommendation of the Magistrate Judge is **ACCEPTED**, and the decision of the Commissioner is **AFFIRMED**. The Clerk is instructed to enter a judgment on behalf of Defendant and to close this case.

It is so **ORDERED**.

**SIGNED** this 8th day of June, 2022.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE